**People of the State of Illinois, Plaintiff-Appellee, v. Edward Boyce, William M. Spencer, Defendants-Appellants.**

**Gen. Nos. 52,853, 52,854.**

First District, First Division.

July 28, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, John R. McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Edward Boyce and William M. Spencer, were tried together before a jury on an indictment charging them with attempt murder, attempt robbery and aggravated battery. They were found not guilty of attempt murder, but found guilty on the other two charges. Defendant Boyce was sentenced on each charge to a term of not less than two nor more than five years in the State Penitentiary, the sentences to run concurrently. William Spencer was sentenced on each charge to a term of not less than four nor more than seven years in the State Penitentiary, the sentences to run concurrently.

The defendants filed separate appeals in this court and on motion of their counsel we consolidated the cases. The defendants contend that they were not proven guilty beyond a reasonable doubt and that they were deprived of a fair trial because of misconduct on the part of the

prosecutor. The defendant Edward Boyce also contends that his sentence was excessive.

The record reveals that two Marshall High School students, Melvin Gaines and Robert McCullough, went to a school supply store near their school at 3260 West 5th Avenue during noon lunch period on October 11, 1966. McCullough handed his transistor radio to Gaines and entered the store. Gaines remained outside. Gaines testified that about 1:20 p. m. the two defendants jumped out of the side door of the store and that defendant Boyce grabbed the radio saying "we want it." Gaines said "I pulled it from him and we tussled with the radio." According to Gaines, defendant Spencer was standing about four feet away at this time. Gaines said that they tussled over the radio for about four minutes. He testified that then Spencer said "we are going to get the radio anyway" and that Spencer took a gun out of his pocket and shot him in the upper right part of his leg. Robert McCullough then came out of the store and took the radio from Boyce. Spencer shot McCullough in his right thigh. Gaines and McCullough then ran into the store. When they got inside the store Spencer and Boyce came up to the doorway and according to Gaines Spencer started shooting. Five shots were fired and Gaines was struck twice in the lower left part of his ankle.

Robert McCullough testified that when he looked out of the store window he saw Boyce struggling with Gaines over the radio. He came out of the store and took the radio away from both of them. Spencer then shot him above his right knee. He and Gaines ran into the store and Spencer shot him twice again. At this point Spencer and Boyce ran away. McCullough stated that he was in the hospital for five months.

Three witnesses testified for the defense. Patricia Ann Belin, a Marshall High School student testified that she had met Boyce and Spencer for the first time at her par-

269

ty about four months before the occurrence. Boyce came with Cleaster Connor, her girl friend. The next time she saw Boyce was at 12:45 p. m. on the day in question when she was in the Vienna Restaurant, about 30 feet from the supply store. She said she was with Cleaster, Dianne Shumate and a boy named Alvin Harris. She said Boyce left with Cleaster to see their baby. She stated that after Boyce left the restaurant she saw him walking in the opposite direction from the supply store. She heard shots and when she got to the supply store she saw one boy lying in the store and the other in the doorway.

Cleaster Connor, a Farragut High School student, testified that at 12:45 p. m. on the day in question she was in the restaurant with the others. She said Boyce told her that their baby was not well and at 1:00 p. m. she walked with him to his home which was six or seven blocks away to see their baby. She testified that she was not married to Boyce.

Alvin Harris, a Marshall High School student, testified that about 12:30 p. m. on October 11, 1966, he met Boyce on a corner near the restaurant and that Boyce gave him a radio. He said he went into the restaurant to eat and did not see Boyce again that day.

The defendant, William Spencer, took the stand and testified that he did not commit the crime, but was at home during the period of time the crime was committed.

The defendants contend that they were not proven guilty beyond a reasonable doubt because the victims had very limited time and disadvantageous circumstances for observing the faces and other physical features of the two assailants.

We are not in accord with the defendants' contention. Gaines testified that he saw the two defendants in front of the store before he grappled with Boyce for several minutes over the radio and before Spencer shot him. Furthermore, Gaines gave descriptions of the defend-

ants to the police and was able to describe their clothing. McCullough testified on cross-examination that he was in the immediate presence of the defendants for about three minutes, that he had a clear unobstructed view, and that the sun was shining during the attempted robbery. Considering these facts and circumstances we believe that the conditions for observation of the assailants could hardly be more ideal and that the victims' identification of the defendants was direct, clear and positive.

The defendants also contend that the in-court identification was tainted by the unnecessary suggestiveness of the prior lineup and showup. They maintain that it is impossible to say with certainty or beyond a reasonable doubt that the in-trial identifications were independent and uninfected with the lineup and showup testimony, and therefore, there is raised a reasonable doubt of the guilt of the defendants.

Several days after the shootings, Melvin Gaines viewed defendants Boyce and Spencer in a lineup at the police station with five or six other Negro men who were all about the same age. One of the men in the lineup was Alvin Harris who testified at the trial that only he and defendant Spencer had processed hair. This latter fact, the defendants maintain, rendered the lineup suggestive and unfair to the defendants.

A showup was held in Robert McCullough's hospital room on the same day as the above-mentioned lineup. McCullough testified that a third boy, a stranger to him, was brought in alone to his hospital bed to be viewed by him before the two defendants were brought in. Alvin Harris testified that he was the third boy, and that he and the two defendants were brought in later to be viewed. The defendants argue that though wounded in the legs, there is no evidence that McCullough was diagnosed as critical, and there was no emergency which justified bringing in defendants for a showup at a time

271

so unfavorable and under such suggestive circumstances, all making for unreliable identification.

The defendants cite People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152, in support of their position. Mr. Justice Ward speaking for the majority in Blumenshine observed:

> [T]he United States Supreme Court in Stovall v. Denno, 388 US 293, . . . recognized that where "a pretrial identification proceeding occurred on or before June 12, 1967, [the effective date of United States v. Wade, 388 US 218, . . . and Gilbert v. California, 388 US 263, . . . ] a defendant, who was without counsel, is free to establish, based on the totality of the surrounding circumstances, that the viewing of the accused was so wanting in fairness as to deprive him of due process of law. We believe that Stovall requires that a defendant so claiming must prove that 'the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.' 388 US at 301–2, . . ." [citation omitted]. If an accused can support this claim the evidence of identification is rendered inadmissible and not simply affected as to credibility. [Cases omitted.]

People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152.

In the case at bar, we cannot say after reviewing the record that the defendants established that the lineup deprived them of due process of law. The lineup complained of was composed of five Negro men in addition to the two defendants. All of the participants were about the same age, though only two of the men, one of which was the defendant Spencer, had processed hair. From all of the evidence adduced at the trial it would appear that the lineup in the instant case was as fair as a lineup can possibly be.

272

■ Likewise, we cannot say that the showup complained of deprived the two defendants of due process of law. Although a showup has been observed to carry with it a dangerous degree of improper suggestion, People v. Gardner, 35 Ill2d 564, 221 NE2d 232, there may be justifying or saving circumstances. In the case at bar, we think that the five months Robert McCullough was hospitalized was such a circumstance. Not only could not McCullough be moved in order to view the defendants in a lineup thus delaying identification for five months, but there was a strong possibility that he would forget some or all of the aspects of the occurrence in question. Since McCullough could not be moved to the police station we believe that the police were entirely warranted to take the two defendants to McCullough's hospital room.

■ ■ The defendants urge that we should not disregard evidence of an alibi where the only evidence contradicting it rests upon the identification of the defendants. The defendants direct our attention to the case of People v. De Suno, 354 Ill 387, 188 NE 466, in which the Supreme Court held that evidence of an alibi which is uncontroverted must be given some consideration and weight. While we are in accord that the above-mentioned case accurately reflects the state of the law in Illinois on this subject, we cannot agree with the defendants that the defendants' alibis are uncontroverted or, as was the case in People v. Peck, 358 Ill 642, 193 NE 609, controverted only by extremely weak identification evidence. The identification of the defendants in this case was direct, clear and positive, and under the circumstances the credibility of the alibi witnesses and the weight to be given their testimony was for the jury. People v. Coulson, 13 Ill2d 290, 149 NE2d 96. This court will not substitute its judgment for that of the jury. People v. Malmenato, 14 Ill2d 52, 150 NE2d 806.

■ The defendants contend that the failure of the State to call any of the fifteen persons in the school supply store at the time of the occurrence as witnesses raises an inference adverse to the State's case. In People v. DiVito, 66 Ill App2d 282, 214 NE2d 320, cited by defendants, the victim was unable to identify the defendant and the conviction was based upon circumstantial evidence. A friend of the complaining witness was in the apartment while the robbery was committed, but though this person gave his address to the police he was not called as a witness. Furthermore, there was no testimony that the victim's friend was not available or that any effort had been made to locate him. The Appellate Court stated that since this witness was in the apartment for more than a full hour during the course of the robbery the inference might well be that he had seen the robbers and would have testified that the defendant was not one of them. In the case at bar, however, the two victims both positively identified their assailants. In addition, there was no showing that the fifteen persons in the store were known to either the victims or the police. We think that the facts and circumstances of the instant case compel the application of the holding in People v. Jones, 30 Ill2d 186, 195 NE2d 698,[1] and we hold accordingly that the State was not obliged in the case at bar to bring in any of the fifteen people in the school supply store.

■ ■ The defendants further contend that the conduct of the prosecutor during his closing argument prejudiced defendants' case and resulted in an unfair trial. The defendants refer to the prosecuting attorney's introduction of new evidence without being sworn as a

[1] The State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution. People v. Jones, 30 Ill2d 186, 190, 195 NE2d 698, 700.

witness in an attempt to discredit the testimony of Patricia Belin. No objection was made to this comment of the prosecutor during his argument to the jury and any error that may have occurred was waived. People v. Donald, 29 Ill2d 283, 194 NE2d 227. However, we have examined the argument of the prosecutor on this point and while certain portions appear to have been improper, in view of the clear and convincing evidence of guilt we cannot say that such remarks prejudicially influenced the jury or that the verdict could have been otherwise had the remarks not been made. People v. Hines, 30 Ill2d 152, 195 NE2d 712.

■ The defendant, Edward Boyce, also contends that his sentence was excessive and out of proportion to the nature of his offense. It is argued that he did not have a gun and that all he did was to try to take the radio from Gaines. Defendant Boyce's brief recites that "it is possible that he did not even know that his friend carried a gun and it is even more likely that he never anticipated that his friend might use a gun in such a petty attempt involving only a transistor radio." It is clear from the evidence, however, that it was Boyce who first attempted to take the radio from Gaines by force and in the resulting scuffle his friend shot both Gaines and McCullough. Boyce was the initiator. Under the circumstances we cannot say that his sentence of two to five years is excessive.

For the foregoing reasons the judgments of the Circuit Court are affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.