**People of the State of Illinois, Plaintiff-Appellee, v. Charles D. Baker, Defendant-Appellant.**

**Gen. No. 52,933.**

First District, Fourth Division.

September 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, David C. Baylor, and

James Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSES CHARGED

(1) Count I—Armed Robbery. Ill Rev Stats (1967), c 38, § 18–2.

(2) Count II—Aggravated Battery. Ill Rev Stats (1967), c 38, § 12–4(a) (causing great bodily harm).

(3) Count III—Aggravated Battery. Ill Rev Stats (1967), c 38, § 12–4(b)(1) (using a deadly weapon).

JUDGMENT

After a bench trial, defendant was found guilty of all three offenses. He was given concurrent sentences of 12 to 18 years on the armed robbery charge, and 1 to 5 years on each charge of aggravated battery.

CONTENTIONS ON APPEAL

1. The charged offenses arose out of the same transaction or series of transactions and, therefore, only one sentence should have been imposed.

2. The sentences imposed are excessive.

EVIDENCE

Gerald O'Brien, for the State:

At approximately 11:30 p. m. on April 15, 1967, he was leaving the 2811 Club, a tavern at Fifth and California Avenues. When he had walked 15 to 20 feet down the street toward his car to go home, he was hit with a knife in the back of the neck; then he turned around and was hit on the jaw, causing him to fall to the ground. Defendant, whom he had never seen before, stood over him, grabbed his watch, and cut at him with a knife. (He identified both the watch and the knife, which were introduced into evidence.)

Defendant told him to put his money on the sidewalk. When he reached into his pocket to get the money, defendant again sliced at him with the knife. His shirt was cut by the knife and, during further attempts to fend off the knife, his finger and the front of his neck were cut. Defendant then pocketed the knife and started kicking him, when two police officers came to his aid.

He had had three or four drinks at the tavern and was sober. When he left there he was alone, but there were quite a few people on the street. He never swung at defendant, although defendant never got his money. He has a 3-inch scar on the back of his neck resulting from the first blow.

Police Officer Alvin Young, for the State:

On April 15, 1967, while in a squad car at California and Madison, he first saw Gerald O'Brien on his hands and knees, being kicked about the head and shoulders by defendant. O'Brien's face and head had been bloodied. The witness and his partner, Garrison, restrained defendant and searched him, finding the knife in evidence. At the police station, Officer Garrison searched defendant and took a gold watch from his pocket.

Police Officer Millard Garrison, for the State:

He corroborated the testimony of Officer Young in all essentials.

Defendant, Charles D. Baker:

On the evening in question he was working at the 2811 Club. He noticed that O'Brien was interfering with couples at the bar and defendant was told to ask him to leave, which he did. Later he saw O'Brien outside, where he "had a woman up against the fence." The witness hit O'Brien with his hand, but did not strike or cut him with a knife. When the police then appeared and stopped the fighting, he had no knife or weapon in his hand.

He owned the knife in evidence, but hadn't seen the watch before. He did not know the woman to whom O'Brien was talking, but he did hear her say, "Let me

alone." She ran as soon as the witness hit O'Brien with his fist and knocked him down. The witness had been drinking, but was not intoxicated to the extent of not knowing what he was doing. He didn't know whether he had kicked O'Brien in the face and shoulders. He denied that he used a knife, asked for money, or took the watch.

At the hearing in aggravation and mitigation, the State's Attorney advised the court that defendant had been convicted in 1939 for robbery and two charges of theft, and sentenced to 1 to 20 years. After parole in 1943, he was next sentenced in 1949 to 60 days for tampering with an auto. In 1952 he was convicted by a Georgia Federal Court and sentenced to 3 years for interstate transportation of a stolen vehicle. In 1957 he was sentenced in Illinois to 1 to 10 years on a charge of larceny. Defendant was gainfully employed from 1965 to the time of this arrest in 1967.

OPINION

Defendant maintains that the offenses for which he has been adjudged guilty arose out of the same transaction or series of transactions and, therefore, mutiple sentences should not be imposed. He cites several authorities for this proposition, placing primary reliance on People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299. In that case there was one indictment with two counts, one charging forcible rape, the other, incest. The defendant was found guilty on both counts, and the judge imposed concurrent sentences of 5 years for rape and 19 to 20 years for incest. The court stated at page 259:

> There is no doubt that it was proper to join the two charges in a single indictment, and to try them together, since they were both based upon the same occurrence. (People v. Wilfong, 19 Ill2d 406, 408; People v. Smith, 11 Ill2d 280, 284; People v. Stingley, 414 Ill 398.) The reach of the question that the defendant raises, however, extends beyond

453

> the accommodations that have been made, in criminal as well as civil cases, in order to avoid variances between pleading and proof. That question is whether two separate punishments can be imposed for a single act.

It then determined that although the two offenses had certain different elements, there did exist a common denominator, the element of unlawful carnal knowledge.

The court in Duszkewycz discussed related precedents that shed light on the specific issue but were not controlling. The closest case, People v. Stingley, 414 Ill 398, 111 NE2d 548, dealt with the legality of two *consecutive* sentences entered upon two counts of the same indictment, one an assault with intent to rape, the other an assault with intent to murder, "both of which arose out of a single series of acts committed upon the same victim at the same time and place." (P 399.) The court in the Stingley case found that imposition of consecutive, as distinguished from concurrent, sentences would prejudice defendant and violate his constitutional rights, and held that although consecutive sentences had been imposed, they were being served concurrently and "the satisfaction of one will satisfy both." (P 405.)

People v. Schlenger, 13 Ill2d 63, 147 NE2d 316, was also discussed in Duszkewycz. That case concerned a defendant who had pleaded guilty to armed robbery and grand larceny in separate counts relating to the same occurrence; concurrent sentences were imposed. There, the court determined that the judgment should have been only for the greater offense (armed robbery, which necessarily included the lesser offense of larceny). In so doing, it recognized "the non sequitur of the proposition that because a sentence is required to run concurrently, it necessarily is not prejudicial," finding that there would be prejudice to the defendant in connection with

his application for parole. The judgment for the lesser offense was therefore set aside.

Although Duszkewycz did not concern an included offense, and was therefore not directly in point with either of these cases, its reliance on them is evident. For example, the court stated at page 261:

> The Stingley case makes it clear that two punishments can not be imposed for a single act, even though different ingredients are involved in the two crimes. In that case, however, the two sentences were identical, and it was not necessary to decide which should be set aside. It was sufficient to hold, as the court held, that "the satisfaction of one will satisfy both."

It then decided that only one sentence should be imposed, that for the greater offense, and the judgment on the count charging incest was reversed.

The case at bar contains three counts, one for robbery and two for aggravated battery (causing great bodily harm and using a deadly weapon). Applying the guidelines and limitations laid down in the cases, the disposition of this case depends primarily upon whether the offenses charged in the separate counts resulted from the same conduct. The provision of the Criminal Code relating to the imposition of sentences is chapter 38, section 1–7(m) Ill Rev Stats (1967), which states:

> When a person shall have been convicted of 2 or more offenses which did not result from the same conduct, either before or after sentence has been pronounced upon him for either, the court in its discretion may order that the term of imprisonment upon any one of the convictions may commence at the expiration of the term of imprisonment upon any other of the offenses.

The term "conduct" is defined in section 2–4 as "an act or a series of acts, and the accompanying mental state." The Committee Comments on section 1–7(m) (SHA, c 38, § 1–7(m)), state that the language of that section was intended to codify the holding in Schlenger, supra, so that if the offenses charged resulted from the same conduct, the defendant may not be sentenced on more than one, either concurrently or consecutively.

In the instant case, O'Brien testified that defendant hit him from the rear, knocked him to the ground, and then cut him with a knife while taking his watch and demanding his money. This concluded, defendant proceeded to kick him about the head and shoulders until the police arrived at the scene. The victim's testimony as to the beating that was inflicted on him was corroborated by the two policemen, and a search of defendant subsequent to his arrest produced the victim's watch.

We are of the opinion that defendant's conduct constituted armed robbery and one separate and distinct offense of aggravated battery. The initial striking of the victim by defendant, followed by the use of the knife, together constituted the use of force which was an element of the armed robbery. The judgment on the second count of aggravated battery (using a deadly weapon) is, therefore, reversed. It was after the robbery had been completed, however, with the taking of the watch, that defendant committed a separate crime by kicking the victim in the head, causing great bodily harm. In affirming convictions for two different crimes, we do not mean to imply that defendant's acts of battery and robbery were wholly unrelated in time and fact; the evidence clearly indicates that there was a connection. However, the "conduct" in perpetrating the two offenses was not the same conduct as it is defined in the statute quoted above; the acts, and especially their accompanying mental state, were different, even though closely joined in time.

■ Our decision (as to the two judgments we are affirming) is distinguishable from other cases which have reversed separate convictions arising out of the same conduct or transaction. People v. Boyd, 105 Ill App2d 345, 245 NE2d 587; People ex rel. Starks v. Fry, 39 Ill 2d 119, 233 NE2d 413; People v. Squires, 27 Ill2d 518, 190 NE2d 361; People v. Schlenger, 13 Ill2d 63, 147 NE2d 316. Those cases all found that when a single course of conduct was the basis for the separate convictions, the prejudicial punishment must be reversed. We find that the conduct in the instant case was not a single transaction or act but two separate acts or series of acts, and that two convictions with concurrent sentences are proper, one for armed robbery and one for aggravated battery. See People v. Weaver, 93 Ill App2d 311, 236 NE2d 362; People v. Mitchell, 101 Ill App2d 380, 243 NE2d 358; People v. Raby, 40 Ill2d 392, 240 NE2d 595.

Defendant also contends that the sentences imposed are too severe and should be reduced. Having reversed one aggravated battery judgment, we are concerned with two concurrent sentences, one of 12 to 18 years for armed robbery, the other of 1 to 5 years for aggravated battery.

■ Defendant cites People v. Lillie, 79 Ill App2d 174, 223 NE2d 716; People v. Jones, 92 Ill App2d 124, 235 NE2d 379; and People v. Marshall, 96 Ill App2d 124, 238 NE2d 182. We have reviewed these decisions, but conclude that the nature of the offenses in the instant case, and the attendant circumstances, including defendant's criminal record, require that we affirm the sentences as imposed (except as previously noted). We consider applicable the statement of the court in People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (citing People v. Smith, 14 Ill2d 95, 150 NE2d 815), that a reviewing court "should not disturb the sentence unless it clearly appears . . . that the penalty is manifestly in excess of the proscription of section 11 of Article II of the Illinois Constitu-

tion which requires that all penalties shall be proportioned to the nature of the offense."

The judgments and sentences for armed robbery and for one count of aggravated battery (causing great bodily harm) are affirmed. The judgment for the other count of aggravated battery (using a deadly weapon) is reversed.

Affirmed in part, reversed in part.

DRUCKER, P. J. and McNAMARA, J., concur.