People of the State of Illinois, Plaintiff-Appellee, v. Louis Owens, Defendant-Appellant.

Gen. No. 53,702.

First District, Third Division.

June 18, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant Louis Owens was charged with the crimes of armed robbery and aggravated battery. After a jury trial, he was found guilty of both offenses, and sentenced to the penitentiary for twenty to forty years, the sentences to run concurrently. Defendant appeals, contending that the introduction into evidence of a statement made to one of the arresting officers constituted prejudicial error, and that the pretrial identification procedure employed by the police was so grossly suggestive as to have violated due process of law. Defendant conducted his own defense. However at trial, the court appointed an assistant public defender to aid in the defense. The facts as adduced at trial are as follows.

While making a delivery, Roger Russell, a laundry truck driver, was robbed and shot by a man whom he identified as defendant. This took place at about 11:00 a. m. on January 24, 1968 at 8530 South Justine Street, Chicago. Russell testified that as he returned to his truck, he passed within three feet of defendant. As he stepped into the truck, he turned around and saw defendant about six inches away and holding a gun in his hand. Defendant ordered him to get back in the truck or he would kill him. Russell knocked defendant down, and also knocked the gun from his hand. They scuffled; defendant grabbed the gun and shot Russell in the leg. As Russell lay on the floor of the truck, defendant held the gun on him, took about $100 and fled. Russell stated that he never took his eyes off defendant because he didn't know what was going to happen next. When the police came, Russell described his assailant as a male negro, 45 or 50 years old, five feet nine or ten inches tall, weighing about 175 pounds, wearing a red shirt, green sweater, dark pants, black shoes and socks, a beige coat and a green beany.

Officer O'Neill, one of the arresting officers, testified that when notified of the robbery, he, with Officers Sihocky and Douma, proceeded to the vicinity of the occurrence, boarded a bus and arrested defendant. Defendant was a male negro, approximately 48 years old, five feet nine inches, 175 pounds, and was wearing a green sweater, maroon shirt and bluish-gray trousers. A search of defendant revealed that he had a revolver with three live cartridges and one expended shell, and also that he had $100 in his possession. The arresting officers searched the bus, and found a beige coat and green cap on the floor two seats in front of where defendant had been sitting. Over defendant's objection O'Neill was permitted to testify that defendant told him that he shot Russell in self-defense.

As a result of the gunshot, Russell's left femur was shattered. He underwent surgery, was placed in traction, and then had to wear a cast from his chest to his toes. He was hospitalized for over five weeks. Russell identified defendant as his assailant, both at the hospital and at trial. He also testified that the gun recovered from defendant's person was similar to the gun used by his assailant.

Officers Adams and Parker, investigating police officers, testified that defendant admitted to them that he attempted to hold up Russell; a struggle ensued; Russell was shot and he took Russell's money.

Defendant first contends that the introduction into evidence of a statement made by him to Officer O'Neill that he shot Russell in self-defense constituted reversible error.

Prior to trial, defendant filed several pro se motions, including one to suppress any oral statements he may have made, claiming that any such statements were made before he was informed of his constitutional rights and because the statements were the product of physical coercion. At the hearing on the motion, all of the police

officers involved testified that they had given defendant his constitutional warnings and also denied that they had struck or abused defendant. The assistant State's Attorney then informed the court that no statements had been made by defendant to Officer O'Neill or his two partners. The judge informed defendant that since the prosecutor had stated that there were no statements made to O'Neill, anything defendant had said to O'Neill or his two partners would not be admitted into evidence. The judge also ruled that the statements made to Officers Parker and Adams were voluntarily made after defendant had received his constitutional warnings, and would be admissible in evidence. There is no claim of error in that ruling. At trial, notwithstanding the court's earlier announcement, O'Neill was permitted to testify that defendant had told him that the shooting was an accident, that it happened in self-defense.

We are of the opinion that the introduction into evidence of the oral statement made by defendant to O'Neill, although improper because of the trial judge's earlier ruling, amounted to harmless error.

■ Where the record contains sufficient competent evidence to establish defendant's guilt beyond a reasonable doubt, the judgment will not be reversed for error in admitting evidence unless it can be seen that the error was prejudicial. People v. Baker, 365 Ill 328, 6 NE2d 665 (1937). As stated in People v. Oberholdt, 359 Ill 39, 193 NE 608 (1934), ". . . the admission of incompetent testimony will not constitute reversible error if it appears that such testimony could not reasonably have affected the result." (at p 40)

■ In the instant case, the testimony of O'Neill concerning defendant's statement did not constitute reversible error in light of the overwhelming evidence of defendant's guilt. Russell had an excellent opportunity to view his assailant, particularly during their struggle, and he testified that he never took his eyes off defend-

ant. Russell immediately gave a clear and accurate description of the assailant to the police, and defendant, fitting that description perfectly, was arrested shortly afterwards in the area of the crime. When defendant was arrested, he was carrying a revolver with three live cartridges and one expended shell. Russell testified that this gun resembled the weapon used by his assailant. Defendant also had in his possession the sum of one hundred dollars, the same amount which had been taken from Russell. Moreover O'Neill's testimony as to defendant's admission was merely cumulative in nature. Both investigating police officers, Parker and Adams, testified without objection that defendant had admitted his guilt to them. It seems clear that O'Neill's testimony as to defendant's statement could not reasonably have affected the result, and the introduction into evidence of that statement was not reversible error.

Defendant, relying on Stovall v. Denno, 388 US 293, 18 L Ed2d 1199, 87 S Ct 1967 (1967), next argues that the police identification procedure was so grossly suggestive as to have violated due process of law and thus rendered the in-court identification of defendant by Russell constitutionally inadmissible.

After defendant was arrested, he was given his constitutional warnings, then taken to a police station where he was questioned and admitted his guilt to the two detectives. Subsequently he was brought to the hospital where Russell had been taken. Defendant then was told to put on the beige coat and green cap which had been found on the floor of the bus. While wearing handcuffs he was shown singly to Russell, and Russell identified him as his assailant.

In Stovall, supra, the victim was stabbed eleven times and was scheduled to undergo major surgery for the injuries. Defendant was brought to the victim's hospital room, handcuffed to one of five policemen accompanying him, and the victim identified defendant as the man who

had stabbed her and murdered her husband. The court, while condemning the practice of showing suspects singly to persons rather than as a part of a lineup, noted that a claimed violation of due process arising out of a one-man show-up depended on the totality of the circumstances surrounding it. The court went on to hold that, under the emergency circumstances of that case, the single confrontation at the hospital was permissible.

In People v. Boyce, 113 Ill App2d 266, 252 NE2d 71 (1969), the victim was shot in the leg while trying to prevent a theft. As a result of his injuries, he was hospitalized for five months, although there was no evidence that his condition was ever critical. Several days after the crime, both defendants were taken to the victim's hospital room and were identified by him. This court held that since the victim was hospitalized for five months and could not be moved from the hospital, the police were entirely justified in bringing the two defendants to the hospital room for a confrontation.

■■ Similarly in the instant case, defendant's right to due process was not violated by the identification procedure employed by the police. Russell had sustained a serious injury, the shattering of a femur. He eventually underwent surgery, was in traction for several weeks and then was placed in a cast from chest to toes. In view of these circumstances, we believe that the police conducted the only feasible identification procedure in taking defendant to Russell's room. Nor did requiring defendant to wear the coat and cap at the confrontation violate his due process. Caruso v. United States, 406 F2d 558 (CA 2nd 1969).

■ Even if we were to determine that the pretrial confrontation was grossly suggestive, the in-court testimony of the identifying witness would still be permissible as long as the record clearly revealed that the identifying witness' prior observation of defendant was sufficient to serve as an independent origin for the in-court identifi-

cation. People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152 (1969) ; People v. Cook, 113 Ill App2d 231, 252 NE2d 29 (1969). As we have already noted, Russell's opportunity to observe his assailant was excellent. His description to the police was detailed and accurate. He identified defendant just a few hours after the robbery had occurred. Russell's prior observation was more than sufficient to serve as an independent origin for the in-court identification.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.