The People of the State of Illinois, Plaintiff-Appellee, *v.* David Goss, Defendant-Appellant.

(No. 56045;

First District (4th Division)—February 21, 1973.

DIERINGER, J., dissenting.

James J. Doherty, Public Defender, of Chicago, (Sandra-Ann Strasel and James N. Gramenos, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, James R. Truschke, and Lois Feinberg, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

Defendant, David Goss, together with Anthony Robinson and Kenneth Simmons, was charged with the murder of Miguel Barreto, armed robbery of Miguel Barreto and Terrie Tatum, aggravated battery upon Terrie Tatum and unlawful restraint of Terrie Tatum. Goss waived a jury trial. After a trial by the court, which preceded the trial of Simmons and Robinson, Goss was found guilty of murder (under the felony-murder rule), aggravated battery and armed robbery as charged. The unlawful restraint count was stricken. Defendant was sentenced to the penitentiary for a term of not less than fifty (50) nor more than one hundred (100) years on the charge of murder, not less than five (5) nor more than ten (10) years on the charge of armed robbery and five (5) to ten (10) years on the aggravated battery charge, the sentences to run concurrently.

On appeal, defendant contends that he was not proven accountable on the charge of murder beyond a reasonable doubt and that the fifty (50) to one hundred (100) year sentence was excessive.

Terrie June Tatum testified that on November 18, 1970, at about 10:00 P.M., she and Miguel Barreto left her sister's home and went to a nearby gas station to call a cab. She was making the call and Barreto was standing beside her when Robinson, Simmons and Goss appeared. Mrs. Tatum stated that Robinson pulled a gun, and that he and Goss pushed the victims down. The three men told the victims to get up or they would kill them. They led Mrs. Tatum and Barreto into an alley and took their rings and Barreto's watch. Then Robinson and Goss started beating Miguel. Simmons told Barreto to get up or he would shoot him. When Miguel could not get up, Robinson bent down and shot him in the back of the head. Mrs. Tatum stated that after the shooting Goss called her names and said, "Let's shoot her." Simmons said, "Let's take her to bed." A police car came by and she screamed.

Officer Jerry Warywoda testified that he saw Goss dragging Terrie Tatum down the street with his hand around her neck and that she screamed, "Help. They have just killed my boyfriend." The officer placed Goss under arrest. Officer Robert L. Grenlie testified that he searched David Goss and found some of the victims' property and some cartridges. These items were inventoried. It was stipulated that if Dr. Jerry Kearns

were called, he would testify that in his opinion the cause of Miguel Barreto's death was a bullet wound in the head.

The defendant, David Goss, took the stand on his own behalf. He testified that he was in the company of Anthony Robinson and Kenneth Simmons when Robinson said he was going to rob two people standing at a phone booth. Defendant asked Robinson if he was crazy, and when Robinson replied he was serious, defendant crossed to the other side of the street. He saw Robinson pull a gun. Robinson took the man and woman into the alley and hit the man on the head with the gun. Defendant came back across the street and told Robinson not to do it, to just take their money. Robinson turned the gun on Goss and told him to get out of his way. The defendant stated that he pushed Robinson back. Goss said he was about five feet away when Robinson shot Barreto. The defendant denied that he robbed the victim or beat up Barreto.

Defendant contends that his accountability for murder was not proven beyond a reasonable doubt. He alleges that he was not a participant in the crime charged, but rather that he was a victim of an unfortunate choice of friends and was merely in the wrong place at the wrong time. Defendant cites *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284, for the proposition that the legislature did not intend to establish criminal responsibility through guilt by association.

■■ In *Ramirez*, the court stated that in order to bring an accused within the provisions of the accountability statute, ch. 38, Ill. Rev. Stat. 1969, par. 5-2(c), three elements, which it found were not present in that case, must be established:

"(1) that he solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) that this participation on his part must have taken place either before or during the commission of the offense; and (3) that it must have been with the concurrent, specific intent to promote or facilitate the commission of the offense." 93 Ill.App.2d 404, 410, 236 N.E.2d 284, 288.

In the instant case, it is undisputed that Goss was present when Robinson stated he was going to rob the victims and during the commission of the crimes. There was evidence that the defendant, along with the others, pushed the victims down at the phone booth, then told them to get up and took them into the alley. The trial court also had evidence before it that Goss and Simmons took jewelry from the victims, that Goss gave Barreto a beating before he was killed and that a police officer saw the defendant dragging Mrs. Tatum down the street with his hand around her neck.

■■ The facts in the instant case show far more than the mere

presence of Goss. We think there was ample evidence to establish beyond a reasonable doubt all three of the elements required by *Ramirez*. Where, as here, a case is tried without a jury, it is the function of the trial judge to determine the credibility of the witnesses and the weight to be afforded their testimony, and a conviction will not be reversed unless the evidence is so improbable as to raise a reasonable doubt of guilt. *People v. Nicholls*, 44 Ill.2d 533, 540, 256 N.E.2d 818, 822-823.

■■ We find no merit to the contention that the testimony offered by the State was so inconsistent and conflicting as to leave a reasonable doubt as to defendant's guilt. Any discrepancies were slight and inconsequential.

We have been asked to consider a reduction of defendant's sentence of 50 to 100 years on the murder conviction. At the time of the sentencing, the defendant was 18 years of age and had no criminal record. The evidence reveals that the defendant was not the one who pulled a gun and deliberately shot and killed the deceased. We have considered these factors and the ability for rehabilitation of the defendant.

■■ As stated in *People v. Scott*, 117 Ill.App.2d 344, 350, 253 N.E.2d 553, 556, the principle of indeterminancy of sentence necessarily leaves to the professionals in the behavioral sciences the determination of the optimum date for release, whereas the court in fixing a maximum sentence can determine the total length of possible incarceration.

■■ A reviewing court is empowered under Supreme Court Rule 615, ch. 110A, Ill. Rev. Stat. 1969, par. 615(b) (4), to reduce the punishment imposed by the trial court. We are aware of the Supreme Court's admonition in *People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673, 677, that this power should be applied with considerable caution and circumspection. Nevertheless, under the facts and circumstances in this case we are of the opinion that the sentence was excessive, and that a more appropriate sentence would be imprisonment for a term of not less than twenty-five (25) nor more than one hundred (100) years for the offense of murder. We modify the Circuit Court judgment to that extent.

As modified the judgments of the Circuit Court are affirmed.

Judgments affirmed as modified.

ADESKO, J., concurs.

Mr. JUSTICE DIERINGER dissenting:

I concur on affirming the judgments of conviction, but respectfully dissent as to reduction of sentence.